## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| ROSEMARY LEVESQUE, )<br>)<br>    *Plaintiff*       )<br>)<br>v.                                    )<br>)<br>MICHAEL J. ASTRUE,        )<br>*Commissioner of Social Security,*[1] )<br>)<br>    *Defendant*      ) | *Docket No. 06-162-B-W* |

### *REPORT AND RECOMMENDED DECISION*[2]

More than a decade ago, the plaintiff filed applications for both Supplemental Security Income ("SSI") and Social Security Disability ("SSD") benefits. *See* Record at 16. Following a hearing at which she, a medical expert (Peter B. Webber, M.D.) and a vocational expert (Cynthia A. Flint-Ferguson) testified ("First Hearing"), *see id*. at 25-66, by decision dated June 3, 1998 Administrative Law Judge Thomas A. Powell denied both claims ("First Decision"), *see* Finding 13, *id*. at 23. The plaintiff ultimately appealed the First Decision to this court. *See id*. at 430-36. She secured a judgment and order dated May 1, 2002 vacating that decision and remanding the case with instructions to award her SSI benefits and to hold further proceedings with respect to her SSD claim. *See id*. at

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted currently serving Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on October 5, 2007, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

439-41. Following remand, a new administrative law judge (James Stephen Russell) held a new hearing at which the plaintiff, a medical expert (William J. Hall, M.D.) and a vocational expert (Flint-Ferguson) testified ("Second Hearing"). *See id.* at 421. By decision dated February 27, 2004 he denied the SSD claim ("Second Decision"). *See* Finding 11, *id.* at 426. The plaintiff sought review by the Appeals Council, *see id.* at 461-62; on or about November 23, 2005, that body vacated the Second Decision, remanding the case to the administrative law judge for further proceedings and issuance of a new decision on the ground that the hearing recording could not be located and the record therefore was incomplete, *see id.* at 469-70.[3] Administrative Law Judge Russell convened yet another hearing, at which the plaintiff and a new vocational expert (Susan McCarron) testified ("Third Hearing"). *See id.* at 326-417. He then issued a decision dated April 28, 2006 denying her SSD claim ("Third Decision"). *See* Finding 10, *id.* at 325. The plaintiff, who contends that she was disabled as of her date last insured (March 31, 1990) by musculoskeletal disorders and disorders of the back, returns to this court, complaining that the Third Decision, as well, contains reversible error. I agree. Accordingly, I recommend that the Third Decision be vacated and the case remanded for further proceedings.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), in the Third Decision the administrative law judge found, in relevant part, that the plaintiff's date last insured (for SSD purposes) was March 31, 1990, Finding 2, Record at 321; that she retained the residual functional capacity ("RFC") to perform a range of light work, *id.* at 323, with the following limitations: need of a sit/stand option; limitation to only occasional push/pull activity and occasional overhead reaching with her left upper extremity but with full use of her right upper extremity;

---

[3] At oral argument, counsel for the commissioner confirmed that the tape recording of the Second Hearing never has been found. The *(continued on next page)*

limitation to only occasional climbing of stairs or ramps, balancing, stooping, kneeling, crouching and crawling; and need to avoid climbing ropes or ladders, Finding 4, *id*. at 321; that, considering her age ("younger individual" as of her date last insured), education (high school, able to communicate in English), work experience (semi-skilled work, providing job skills transferable to other work) and RFC as of her date last insured, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 324; and that she therefore had not been under a disability at any time through the date of decision, Finding 10, *id*. at 325. The Appeals Council declined to review the decision, *id*. at 309-12, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).[4]

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the

---

Record contains no transcript of that hearing.

[4] At oral argument, the parties stipulated that page 697 was missing from the Record and that a copy of the missing page transmitted in PDF format by counsel for the commissioner to the court should be made page 697 of the Record. I so ordered.

commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff assails the Third Decision on grounds that the administrative law judge (i) impermissibly predicated his RFC determination on an adverse credibility finding and/or on his own analysis of the raw medical evidence, (ii) relied on flawed vocational-expert testimony to support his Step 5 finding and (iii) denied her due process by arriving at a different RFC than that posited to the vocational expert, thereby depriving her counsel of the opportunity to cross-examine that expert on all aspects of the RFC ultimately found. *See generally* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 10). I agree that, on the basis of the second point of error, reversal and remand are warranted. For the benefit of the parties on remand, I briefly consider the plaintiff's remaining points of error.

## I.  Discussion

### A.  Vocational Testimony

At the Third Hearing, vocational expert McCarron identified three jobs that a person with the RFC posited by the administrative law judge could perform: self-service gas-station attendant, gate guard and cashier II. *See* Record at 405-08. She testified that the gas-station attendant and gate-guard jobs have an SVP, or Specific Vocational Preparation, level of 3, which equates to semi-skilled work, *see id*. at 407-09; *see also, e.g*., Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2007) ("SSR 00-4p"), at 245 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT [Dictionary of Occupational Titles]."). Thus, the plaintiff's ability to perform those two jobs hinged on whether she had acquired skills. *See, e.g*., 20 C.F.R. § 404.1568(b) ("Semi-skilled work is

work which needs some skills but does not require doing the more complex work duties.").

At oral argument, counsel for the commissioner conceded that, in view of reaching limitations found by the administrative law judge, the plaintiff could not perform the cashier II job. He further conceded that there is no evidence of record that, as a result of past work experience, the plaintiff possesses transferable skills. Nonetheless, he contended that the plaintiff properly was found capable of performing the semi-skilled gas-station-attendant and gate-guard jobs in view of the rebuttable presumption established by 20 C.F.R. § 404.1564(b)(4) that a person with a high-school education is capable of performing semi-skilled work. Counsel for the plaintiff rejoined that this presumption had in fact been rebutted when, at the plaintiff's first two hearings, Flint-Ferguson testified that the plaintiff had no transferable skills. *See* Record at 63, 425. I agree.

Section 404.1564 provides, in relevant part:

> (b) *How we evaluate your education*. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term *education* also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:
>
> \*\*\*
>
> (4) *High school education and above*. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. § 404.1564. At oral argument, counsel for the commissioner argued strenuously that the plaintiff had not rebutted the presumption of capacity to perform the two jobs in question inasmuch as

5

(i) McCarron testified that the two jobs fell on the "low" end of the semi-skilled continuum, *see* Record at 409, and (ii) there was no evidence that the plaintiff had taken special-education classes in school, suffered a head trauma post-graduation or encountered any other difficulty that would dilute the value of her high-school education for purposes of low-end semi-skilled work.

Nonetheless, the commissioner can rely on the presumption created by section 404.1564 only to the extent "there is no other evidence to contradict it[.]" 20 C.F.R. § 404.1564(b); *see also, e.g., Green v. Barnhart*, 29 Fed. Appx. 73, 75 (3d Cir. 2002) ("[W]e emphasize that a claimant's grade level should be used to determine the claimant's level of education only when there is no other evidence to contradict it. It certainly was not the case here that there was no other evidence to contradict a presumption that Green's sixth-grade education meant that he had a marginal education. Green testified that he could not read, and the Commissioner failed to explain his decision in light of that testimony.") (citation and internal quotation marks omitted); *Holliday v. Schweiker*, 563 F. Supp. 1272, 1279-80 (N.D. Ill. 1983) ("At most, one's numerical grade level gives rise to a rebuttable presumption of basic literacy. . . . [T]he Secretary (through the ALJ) had the obligation to develop the record further on the issue of Holliday's literacy once Holliday had adduced evidence sufficient to contradict the inference that his numerical grade level completed in school represents his actual educational abilities.") (citations and internal punctuation omitted).

In this case, Flint-Ferguson twice testified that the plaintiff, whom she was aware was a high-school graduate, had no transferable skills.  *See* Record at 63, 425.[5]  This sufficed to rebut the

---

[5] The plaintiff, who was born on May 26, 1948, *see* Record at 100, had most recently worked as a babysitter from 1992 to 1995, a bartender and hostess at a restaurant from 1987 to 1988, and a truck driver in the paper-making industry from 1981 to 1986, *see id.* at 121. The babysitting job was not performed at a substantial-gainful-activity level. *See id.* at 62. In finding that the plaintiff had no transferable skills, Flint-Ferguson testified: "We're looking at a work history that is semi-skilled, lower level semi-skilled. So for all intents and purposes, transferable skills are non-existent unless she went back into those job areas, which based on the sedentary work capacity, she could not do. So we're looking at unskilled work for this claimant." *Id.* at 63. While, in his Third Decision, the administrative law judge found the plaintiff capable of performing work in the light range, *see id.* at 323, the hostessing, waitressing and truck-driving jobs were performed at a medium exertional capacity, *see id.* at 62. Thus, Flint-Ferguson's testimony cannot be read to *(continued on next page)*

6

presumption created by section 404.1564(b)(4) that the plaintiff was capable of performing semi-skilled work. In the absence of any further record development on the question of capacity to perform semi-skilled work, the finding that the plaintiff could perform the gas-station-attendant and gate-guard jobs was unsupported by substantial evidence. Remand for further proceedings accordingly is required.

### B. Other Points

For the benefit of the parties on remand, I briefly consider the plaintiff's remaining points of error, none of which I find to have merit:

1. <u>Flawed RFC Finding</u>. The plaintiff asserts that the administrative law judge's RFC finding is unsupported by substantial evidence inasmuch as the administrative law judge (i) erroneously jettisoned the only expert RFC assessment that was new as of the time of decision, that of examining physician Douglas M. Pavlak, M.D., *see* Record at 323, 694-95, and (ii) impermissibly substituted his own layperson's judgment as to the plaintiff's RFC, *see, e.g., Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record"). *See* Statement of Errors at 2-4.

The plaint is without merit. While the administrative law judge unfortunately did purport to base his RFC assessment on a negative credibility assessment, *see* Record at 321-23, it is reasonably apparent that he in fact embraced *sub silentio* the RFC assessment of Disability Determination Services ("DDS") non-examining consultant Gary Weaver, M.D., *compare* Finding 4, *id*. at 321, 323 *with id*. at 275-81. He supportably rejected Dr. Pavlak's opinion that it was "quite possible" that the

---

support a finding that the plaintiff had skills transferable to the gas-station-attendant and gate-guard jobs.

7

plaintiff had significant enough back problems as far back as March 30, 1990 to have "warranted appropriate restrictions[,]" *id*. at 694, which he reasonably characterized as lukewarm and tentative, *see id.* at 323; *see also id*. at 695 (statement of Dr. Pavlak that "[q]uite honestly I cannot say that I feel 90 to 95 % confident about this determination.  However, if it is a judgment call of what is simply more likely than not (which I understand to mean about a 51 % likelihood), I would have to side with Ms. Levesque in this regard.").  He was entitled to resolve these evidentiary conflicts.  *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").[6]

    2.    <u>Existence of Substantial Number of Jobs as of Date Last Insured</u>.  The plaintiff next posits that the administrative law judge erred in neglecting to instruct McCarron to testify regarding the number of jobs available in 1990 (her date last insured) instead of then-current numbers of jobs.  *See* Statement of Errors at 5.  She cites no authority in support of this proposition, *see id*., and my research reveals none.  I therefore decline to embrace it.

    3.    <u>Due-Process Violation</u>.  The plaintiff finally complains that the administrative law judge's tinkering with the wording of his RFC findings post-hearing prevented her counsel from effectively cross-examining the vocational expert, thereby depriving her of due process.  *See id*. at 5-6.  I discern no reversible error.  To warrant reversal and remand on the ground of a due-process violation, a claimant must demonstrate prejudice flowing therefrom.  *See, e.g., Chuculate v. Barnhart,* 170 Fed. Appx. 583, 587 (10th Cir. 2006) (rejecting claim of due-process violation predicated on

---

[6] At oral argument, the plaintiff's counsel posited that the correct RFC was the one found by Administrative Law Judge Russell in the Second Decision based on the testimony of Dr. Hall, and that his client was entitled to the benefit of that more favorable RFC finding. He cited no authority for the proposition that, in crafting the Third Decision, Judge Russell was bound by a finding he made in the Second Decision.  In any event, the tape of the hearing at which Dr. Hall testified unfortunately was lost.  In these circumstances, in which the Appeals Council compensated for that loss by directing that a third hearing be held, I am unwilling to rely on the plaintiff's *(continued on next page)*

administrative law judge's denial of permission to submit post-hearing written question to vocational expert when "the ALJ's failure to forward plaintiff's unsupported question does not undermine confidence in the result in this case"); *Adams v. Massanari,* 55 Fed. Appx. 279, 286 (6th Cir. 2003) ("Clearly, in this case, the procedure used by the ALJ did not erroneously deprive Appellant of her interest in the fair determination of her eligibility for benefits, since the ALJ's decision to withhold [a post-hearing] report from the ME [medical expert] had no determinative effect on the outcome of Appellant's hearing."); *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (claim of failure to develop full and fair record, like claim that hearing has been held in absence of waiver of right to counsel, requires showing that Social Security applicant "was prejudiced as a result of scanty hearing.  She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result.").

The plaintiff identifies two assertedly material post-hearing changes in the administrative judge's RFC determination: He added a sit-stand option, and he described her as limited in reaching overhead instead of limited in reaching generally.  *See* Statement of Errors at 5-6; *compare, e.g.*, Finding 4, Record at 321 *with id*. at 405-06.  Nonetheless, the plaintiff neglects to describe how her counsel would have altered his cross-examination of the vocational expert had those modifications been made during her hearing.  *See* Statement of Errors at 5-6.  In addition, from all that appears, the modifications had no outcome-determinative effect.  As it happened, McCarron testified that all three jobs permitted a sit-stand option, *see* Record at 411-12, and the administrative law judge found less of a reaching restriction in his decision (limited only with respect to overhead reaching) than in the hypothetical question propounded to the vocational expert (limited in reaching generally), *compare* Finding 4, *id*. at 321 *with id.* at 405-06.  In the circumstances, the requisite showing of prejudice has

---

counsel's memory of the substance of Dr. Hall's testimony.

9

not been made.

## II.  Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for proceedings not inconsistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of October, 2007.

                                            /s/ David M. Cohen
                                            David M. Cohen
                                            United States Magistrate Judge